IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GRAPHIC COMMUNICATIONS )
NATIONAL HEALTH AND WELFARE )
FUND, )
                                 )
       Plaintiff, )
                                 )
vs. )    Case No. 07-cv-0123-MJR
                                 )
LEE W. TACKETT a/k/a DONALD L. )
TACKETT, LINDA HIESTAND and )
HELEN IRWIN, )
                                 )
       Defendants. )

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### I. Introduction and Procedural Background

Graphic Communications National Health and Welfare Fund ("the Fund") is an employee welfare benefit plan providing medical, hospital and surgical expenses under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* The Fund filed suit in June, 2004, in the Circuit Court of Cook County, Illinois, and thereafter transferred this action to the Circuit Court of Marion County, seeking reimbursement for benefits that it paid to Defendants, Lee W. Tackett a/k/a/ Donald L. Tackett ("Tackett"), Linda Hiestand ("Hiestand") and Helen Irwin ("Irwin"). In February, 2007, Defendant, Travelers Indemnity Company of Illinois n/k/a Travelers Property Casualty Company of America ("Travelers"), removed the action to this Court.[1] The Court

---

[1] In March, 2007, Defendants, Travelers and Gallagher Bassett Services, Inc., moved to dismiss, asserting that they were neither a party to, nor a fiduciary of, the Fund, and that, therefore, they had no duty to the Fund to protect its contractual subrogation interest. On September 4, 2007, the Court found that Travelers and Gallagher were not liable to reimburse

1

exercises subject matter jurisdiction under the federal question statute (28 U.S.C. § 1331), because the action arises under the ERISA statute.

On or about July 10, 2002, Tackett settled workers' compensation cases involving various injuries for $105,000.00. The Fund paid health care providers the sum of $30,292.21 and asserts a lien in that amount against Tackett's workers' compensation recovery. On or about June 2, 2000, Hiestand settled workers' compensation cases involving various injuries for $34,887.90. The Fund paid health care providers the sum of $7,032.76 and asserts a lien in that amount against Hiestand's workers' compensation recovery. On or about June 28, 2002, Irwin settled workers' compensation cases involving various injuries for $81,321.75. The Fund paid health care providers the sum of $24,759.26 and asserts a lien in that amount against Irwin's workers' compensation recovery.

On January 22, 2008, cross-motions for summary judgment were filed by the Fund and by Defendants (Docs. 51, 53). Having carefully reviewed the parties' submissions and after oral argument on April 25, 2008, the Court now rules as follows.

## II. Legal Standard and Analysis

The Seventh Circuit has clarified that the "usual Rule 56 standard of review applies to cross-motions for summary judgment." ***Int'l Brotherhood of Elec. Workers v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002) (citing *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983)**. Thus, in evaluating the Fund's arguments for summary judgment and determining whether a genuine issue of material fact remains,

---

the Fund with the proceeds of their co-defendants' workers' compensation claims and granted their motions to dismiss.

the Court construes the record in the light most favorable to the non-movants, Defendants. In evaluating Defendants' motion and determining whether a genuine issue of material fact remains, the Court construes the record in the light most favorable to the non-movant, the Fund.

Defendants contend the Plaintiff's claim fails under the Illinois Workers' Compensation Act, 820 ILCS 305/21 ("IWCA"), which provides, "No payment, claim, award or decision under this Act shall be assignable or subject to any lien, attachment or garnishment, or be held liable in any way for any lien, debt, penalty or damages...."

Plaintiff contends that the IWCA is trumped by ERISA which preempts state laws that "relate to" an ERISA covered welfare benefit plan. **ERISA § 514(a), 29 U.S.C. § 1144(a)**. A state law "relates to" an ERISA covered plan "'if it has a connection with or reference to such a plan.'" ***District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 129 (1992) (quoting *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 96-97 (1983))**. A state law may "relate to" a benefit plan "even if the law is not specifically designed to affect such plans, or the effect is only indirect." ***Id.* (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990))**. However, preemption will not occur where the state law has only a "tenuous, remote, or peripheral" connection with covered plans, "as is the case with many laws of general applicability." ***Id*. at 129 n. 1(citations omitted)**.

State laws that do not "relate to" an ERISA-covered plan but instead "relate to" a benefit plan established solely to comply with state workers' compensation laws are not preempted by ERISA. **§ 514(a); § 4(b)(3); 29 U.S.C. § 1003(b)(3)**.[2] However, the United States Supreme

---

[2]"The provisions of this subchapter shall not apply to any employee benefit plan if ... (3) such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws[.]**" 29 U.S.C. §**

3

Court refused to give this exemption a sweeping interpretation by holding that ERISA preempted a District of Columbia law requiring employers to continue health care coverage for employees eligible for workers' compensation benefits. *Greater Washington Bd. of Trade*, **506 U.S. at 126-27**. The Court rejected the District's contention that the law was exempted from preemption because it related to the District's workers' compensation plans. The Court noted that whether the law related to a workers' compensation plan was irrelevant where the law also "relates to" a plan subject to ERISA. *See Fuller v. Skornicka*, **79 F.3d 685 (7th Cir. 1996)** (**ERISA did not preempt Wisconsin workers' compensation act as applied to a multiple employer welfare arrangement**).

One of the primary purposes of ERISA is to protect the interests of participants and their beneficiaries from termination of plans without sufficient assets to pay benefits. *See, e. g., Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, **467 U.S. 717 (1984)**. ERISA is designed to provide safeguards with respect to the establishment, operation and administration of plans. **29 U.S.C. § 1001(a) and (b)**.

In *FMC Corp. v. Holliday,* **498 U.S. 52 (1990)**, the Supreme Court read "the deemer clause to exempt self-funded ERISA plans from state laws that 'regulat[e] insurance' within the meaning of the saving clause. By forbidding States to deem employee benefit plans 'to be an insurance company or other insurer ... or to be engaged in the business of insurance,' the deemer clause relieves plans from state laws 'purporting to regulate insurance.' As a result, self-funded ERISA plans are exempt from state regulation insofar as that regulation "relate[s] to" the plans." **498 U.S. at 61**.

---

**1003(b)(3)**.

4

Here, there is a direct nexus between the IWCA and the ERISA plan and, consequently, it falls within the purview of federal law alone. The IWCA's lien prohibition directly and impermissibly affects the Fund's ability to recover benefits and, thus, affects its costs and solvency. With a self-funded plan, the provision of benefits depends on the plan's solvency, whereas the provision of benefits in an insured plan depends entirely on the insurer's solvency. Only federal courts have jurisdiction over ERISA plan solvency. So ERISA preempts the IWCA, and the language in the Act that purportedly precludes Plaintiff's claim in this case under 820 ILCS 305/21 is inapplicable.

Although Defendants argue that the terms of the plan at issue are vague and subject to numerous interpretations, the clause at issue is crystal clear. As set forth in the SPD, a plan participant must repay plan benefits when "you or your covered Dependent *achieve any recovery whatsoever*, through a legal action or settlement in connection with any sickness or Injury alleged to have been caused by a third party, *regardless* of whether or not some or all of the amount recovered was specifically for the Medical or Dental expenses for which Plan benefits were paid[.]" *See* Graphic Communications National Health and Welfare Fund Plan, pp. 56-57 (emphasis added).

At oral argument, defense counsel represented that none of his three clients received, as part of their workers' compensation settlements, any money for medical expenses and therefore Plaintiff should not receive reimbursement for medical expenses that it advanced to Defendants. A look at the actual settlement documents, or "pink sheets" as they are called in the vernacular, belies this representation. The terms of the Illinois Industrial Commission settlement contracts signed by the individual Defendants vary. *See* Doc. 59. Tackett's contract is "a compromise settlement of claims filed and unfiled, which were disputed as to all issues," but "[n]o portion of this settlement

5

represents compensation for lost time or medical benefits." *Id*. Yet the very next sentence reads: "Respondent shall have no responsibility for medical expenses...." *Id*. The front page clearly indicates the medical bills have not been paid. So it is evident that the contract sets up an inconsistency that can only be explained as a concerted effort by the employer to avoid paying medical bills and the petitioner's agreeing that he received no money for medical bills. Such a contract, given that Tackett received $105,000 for injuries to his spine, left leg, right arm and left arm, is overreaching. Obviously, he had medical bills that were unpaid and that related to his workers' compensation claims, or he would not have been paid six figures. The sole reason for the insertion of the inconsistent language was an effort to defeat Plaintiff's lien rights.

The terms of Hiestand's settlement states more simply that she accepted a lump sum "as full, final, and complete resolution of all disputed matters[.]" *Id*. Like Tackett, Hiestand's medical bills were unpaid and therefore in dispute. So the $34,887.90 she received included consideration for the bills.

Under the terms of Irwin's settlement, she accepts a lump sum "in full and final settlement of all claims[,]" including "all claims for past or future medical, surgical or hospital treatments." *Id*. It could not be more clear that her settlement of $81,321.75 included payment for medical bills, contrary to counsel's representation to the Court.

Whether the workers' compensation contracts included payment for medical benefits or not is of no moment because the SPD plainly states "any recovery whatsoever," regardless of whether some or all of the amount received was for medical benefits. Inarguably, Defendants signed supplemental documents, as a condition to receiving benefits, that included the following clause, "I understand that the Fund must be reimbursed for medical benefits or any benefits paid as a result of

an injury or illness if any recovery is made for that injury or illness." *See* Doc. 53, Exhibit D, Hiestand, signed 4/26/2000; Exhibit E, Tackett, signed 7/20/2000; Doc. 54, Exhibit A, Irwin, signed 6/4/01.

Defendants were on notice of the lien and agreed to repay the Fund for any benefits received. The plain language of the plan requires repayment as does the supplemental agreement Defendants signed in order to receive the benefits. Instead, they chose to ignore the lien, gambling that they would not be required to repay the Fund. While the Court is not unsympathetic to Defendants, it recognizes that the Fund has a fiduciary responsibility to enforce its lien on the proceeds of Defendants' workers' compensation settlements in order maintain the solvency of the Fund for the benefit of all participants. This unpleasant episode, which results in Defendants getting less money for their injuries due to the required payback, could have been avoided had Plaintiff been invited to the settlement table before the workers' compensation cases were finalized in negotiation.

For the foregoing reasons, the Court **GRANTS** the Fund's motion for summary judgment (Doc. 51) and **DENIES** Defendants' motion for summary judgment (Doc. 53). The Clerk of Court is **DIRECTED** to enter judgment as follows:

1) in favor of the Fund and against Defendant, Lee W. Tackett, a/k/a Donald L. Tackett, in the amount of $30,292.21. The Court enjoins Tackett from disbursing the amount of $30,292,21 from the workers' compensation settlement proceeds obtained.

2) in favor of the Fund and against Defendant, Linda Hiestand, in the amount of $7.032.76. The Court enjoins Hiestand from disbursing the amount of $7,032.76 from the workers' compensation settlement proceeds obtained.

3) in favor of the Fund and against Defendant, Helen Irwin, in the amount of

$24,759.26. The Court enjoins Irwin from disbursing the amount of $24,759.26 from the workers' compensation settlement proceeds obtained.

This case is closed.

**IT IS SO ORDERED.**

**DATED this 9th day of May, 2008**

<u>**s/Michael J. Reagan**</u>
**MICHAEL J. REAGAN**
**United States District Judge**